ATCHISON, T. & S. F. RY. CO. v. JANDERA.

No. 2174, Okla. T.   Opinion Filed June 8, 1909.

(104 Pac. 339.)

1. **RAILROADS—Injuries to Persons at Stations—Implied Invitation.**
One passing along a recognized way leading from a public street over the station grounds of a railroad company to its station platform, for the purpose of mailing a letter on one of defendant's trains, is there by implied invitation of defendant.

2. **SAME—Persons Mailing Letters on Trains.** It is the duty of a railroad company which carries mail under contract with the United States, and by whose regulation postal clerks on mail trains are required to receive mail matter on the mail car while stopping at stations along its route, to use reasonable care to keep in a reasonably safe condition a recognized way over its grounds to its station platform, and a failure so to do, resulting in personal injury to one passing along said way for the purpose of mailing a letter on one of defendant's mail trains upon its arrival, is actionable negligence.

(Syllabus by the Court.)

*Error from District Court, Noble County; Bayard T. Hainer, Judge.*

Action by Frank J. Jandera against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Henry E. Asp, Charles H. Woods,* and *George M. Green,* for plaintiff in error.

*Henry S. Johnston,* for defendant in error, citing: *Graves v. Thomas,* 95 Ind. 361; *Beck v. Carter,* 68 N. Y. 283; *Harriman v. Pittsburg, etc., Ry. Co.,* 45 Ohio St. 11; *Lepnick v. Gaddis,* 72 Miss. 200; *DeTarr v. Brewing Co.* (Kan.) 61 Pac. 689; *Sanders v. Reister* (Dak.) 46 N. W. 680; *Baltimore & P. R. Co. v. Cumberland,* 176 U. S. 232.

TURNER, J. This is an action to recover damages for personal injuries brought by Frank J. Jandera, defendant in error. plaintiff below, on November 11, 1905, against the Atchison, To-

peka & Santa Fe Railway Company, plaintiff in error, defendant below, in the district court of Noble county. The petition substantially states that defendant owns and operates a line of railway through the city of Perry in this state, with its main track, side tracks, and station grounds within said city; that said grounds are bounded on the north by C street and on the south by B street; that on September 28, 1905, upon said grounds, and a few feet north of B street and defendant's passenger depot, defendant did have, keep, and maintain a "dangerous" hole, about 6 feet wide, 6 feet long, and 7 feet deep, walled with stone; that several weeks prior to said date defendant negligently kept said hole open, exposed, and uncovered, and failed, neglected, and refused to guard or cover same, or place a light or other warning at or in its vicinity; that defendant being wholly unaware of its existence, and that the line of travel from B street to the depot grounds was in any manner obstructed, and desiring to go from B street to the depot grounds on business, did, about half past 10 o'clock at night, pass along B street and upon the premises of defendant, and fall head first into said hole, to his damage $13,120, for which he prays judgment. For answer defendant filed a general denial; alleged that plaintiff's said entry upon its right of way was without license, permission, invitation, or knowledge of defendant; that at the time plaintiff was a trespasser, and was injured as a result of his own recklessness and want of due care, and without any negligence or want of due care on the part of defendant. There was trial to a jury, which resulted in a judgment for plaintiff for $820, and, after motion for a new trial filed and overruled, defendant brings the case here by petition in error and case-made for review.

As the chief assignment of error is that the court erred in refusing to instruct the jury to return a verdict in favor of defendant, we will determine whether the evidence was sufficient to take the question of negligence to the jury. Resolving all controverted questions of fact in favor of plaintiff, the evidence discloses that defendant's railroad runs through Perry on a

straight line northeast and southwest, crossing B and C streets running east and west. Sixth street, being the first running north and south, west of its trackage between B and C streets, consists of a main track and two side tracks a few feet east and a house track some 60 feet west of the main track. Between the main track and house track and near C street is its depot facing the main track, with a platform 16 feet wide, extending along said track from C street to within about 20 feet of the north line of B street. That the usual avenue of approach to said depot and platform was from C street. That for years, and until a short time prior to the injury complained of, pedestrians were in the habit of passing to and from the south end of said platform over a strip of land from B street between the main and house tracks, and, for the purpose of unloading freight from cars standing on said house track, wagons were in the habit of driving from B street northward along the west of said track, and between it and the said platform. Teams also approached said track and platform from C street west of the freighthouse, which was about midway between said streets and west of said house track. That a short time prior to the injury complained of defendant, preparatory to erecting a water tank at the south end of said platform, caused a pile of brick to be placed south of its south end in B street, a few feet south of its north line, around a signpost marked "Railroad Crossing," also a long pile of crushed rock some 2 or 3 feet high west of said pile of brick and east of, and within a few feet of, said house track, and between the south end of said platform and the north line of B street caused a circular excavation to be made some 20 feet in diameter, and filled the same with crushed rock to an elevation of some 2 feet, and within about 4 feet of said main track. It also caused to be dug upon its said right of way, close to the circular foundation, and within 10 feet of the north line of B street, and about 35 feet from the center of said main track, a frost box 4 feet 4 inches square and 5 or 6 feet deep walled with stone, said walls projecting several inches above the ground. That said obstacles so placed completely cut off ap-

proach to said platform from B street across the strip of land aforesaid, except by pedestrians. These were the physical conditions on defendant's right of way at the scene of the injury on the night it occurred. Plaintiff on that night arrived in Perry from his home in the country about 7:30 p. m. About 10:30 p. m. he, desiring to see a friend at the electric light plant located in the south city limits and east of these tracks, started from the corner of C street, passed south along Sixth street nearly to B street, where, for the purpose of mailing a letter on defendant's passenger train carrying the south-going mail, which he thought was about due, turned east and crossed lots to B street, passed along said street near to a point thereon intersected by defendant's main track, and stopped at said sign marked "Railroad Crossing," and, seeing to the north what he thought to be the light of the train, attempted to reach said platform by passing to the right around said circular foundation, and stumbled and turned on his way to said platform around said circular foundation to the left, fell over the projecting wall of said open frost box and into the same, the existence of which was unknown to him, and which was not guarded, nor its presence indicated by light or signal of any kind, and was seriously injured.

In support of its contention it is urged by defendant that at the time of his injury plaintiff, not being upon its right of way by defendant's invitation, express or implied, but for the purpose of mailing a letter on the train, which was a matter of his own convenience, was a trespasser, or at most a licensee, toward whom defendant owed no duty except to refrain from willfully or wantonly injuring him. As the evidence does not tend to show willful or wanton injury, we are constrained to believe the point well taken, unless plaintiff can show an invitation express or implied, to come upon the premises as he did, and the question for us to determine is whether under the facts such invitation can fairly be inferred. If so, defendant is liable, and the judgment of the trial court must be sustained; otherwise not. The test as to whether

or not such invitation may be implied is said, by Mr. Campbell in his work on Negligence, to be:

"The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is a mere pleasure or benefit of the person using it."

It is useless to multiply authorities in support of this rule since the same has been quoted approvingly by this court in *A., T. & S. F. Ry. Co. v. Cogswell,* 23 Okla. 181, 99 Pac. 923, and *Faurot v. Oklahoma Wholesale Grocery Company,* 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136.

Applying these principles to the case at bar, it will be seen that defendant was under contract with the government of the United States to transport the mails on this particular train; that it was doing so according to the laws of the United States; that it had a mail car attached to its train, with a mail agent or postal clerk in charge, and handled the same pursuant to rules and regulations imposed by the post office department, of which we will take judicial notice (*Caha v. U. S.,* 152 U. S. 211, 14 Sup. Ct. 513, 38 L. Ed. 415); that under instructions from said department it was the duty of said clerk to receive any mail presented to him, if properly prepaid by stamps, on said mail car at stations along its route, when offered by any member of the public (Pos. Laws & Reg. [1902] tit. 7, c. 1, § 1145, and tit. 8, c. 3, § 1486; Rev. St. U. S. § 3988 [U. S. Comp. St. 1901, p. 2714]); that plaintiff, at the time, was making his way to defendant's platform over a recognized way of approach from B street for the purpose of making an offer of mailable matter to said clerk, and thereby transact business with defendant when its train should arrive, tender to it, in the shape of the stamps on his letter, indirect payment for the service of transportation which he was about to ask it to perform, and which it had no right to refuse. In thus attempting to pass from B street to the platform and on to the mail car when it should arrive plaintiff was neither a trespasser nor licensee, but was there by the implied invitation of de-

fendant to transact business which defendant had undertaken to do for him, for compensation to be paid by the government. Under the circumstances defendant owed him the duty to exercise reasonable care to provide a reasonably safe passageway from B street to its platform and mail car, and its failure so to do was actionable negligence. 26 Am. & Eng. Enc. of Law, 506, 507, and cases cited.

*Hale v. Grand Trunk, etc., Ry. Co.* 60 Vt. 605, 15 Atl. 300, 1 L. R. A. 187, was a suit in damages for personal injuries. There was judgment *pro forma* for plaintiff in the county court, and the cause passed to the Supreme Court. That court said:

"On November 2, 1885, the defendant was operating a railway from Portland, Me., to Canada Line, and had a station at Berlin Falls, N. H. As such, it was carrying the mail on its mail trains for the United States government, according to the laws of the United States, and pursuant to the conditions and regulations imposed by the post office department, at a fixed compensation. The plaintiff on that evening, in attempting to go to its mail train while stopping at the station at Berlin Falls, for the purpose of mailing some letters, in the exercise of due and proper care, fell from an unguarded, and as he claims, insufficiently lighted platform, leading from the station to the train, and was injured. By the regulations of the post office department it was then the duty of postal clerks on trains carrying the mail to receive at the cars, among other things from the public, letters on which the postage had been prepaid, and there to sell stamps with which to prepay such postage. Hence, as a part of the service which the defendant was performing for the government, and for which it was receiving compensation from the government, it was under a duty to furnish the public a reasonably safe passage to and from its mail train, while stopping at its regular stations, for the purpose of purchasing stamps and mailing letters. The plaintiff was a member of the public, and was attempting to pass over the platform provided by the defendants to the mail train for the lawful purpose of mailing two letters. By accepting the carriage of the mail for the government the defendant became under the duty to furnish him a reasonably safe passage to its mail train for the purpose of mailing his letters. In attempting to pass over the platform to its mail train for this purpose the plaintiff was neither a tres-

passer, intruder, nor loafer, but was there to transact business which the defendant had undertaken to do with him for a compensation received from the government, * * * in fact was there at the invitation of the defendant to transact business which it had been hired to perform for and with him by the government"—

and affirmed the judgment of the county court.

Plaintiff being thus rightfully on defendant's premises, its duty to him was clear. This court in *A., T. & S. F. Ry. Co. v. Cogswell, supra,* states the rule thus:

"On the other hand, one who goes upon the premises of a railway company to transact business with it or its agents, or to transact business in the operation of the road, or who is there by invitation of the company, express or implied, is lawfully there, and the railway company owes him a duty of using ordinary care in the construction and maintenance of its depot and platforms to avoid injuring him. *Bennett v. L. & N. Ry. Co.,* 102 U. S. 577, 26 L. Ed. 235."

In *Christie v. Chicago, etc., Ry. Co.,* 61 Minn. 161, 63 N. W. 482, plaintiff went to defendant's depot with a baggage check to get his daughter's trunk, and while there was injured. The court said:

"It is the duty of a railroad company to keep the approach to its depot and platform reasonably convenient, accessible, and safe for the ingress and egress of passengers, and for the public rightfully and properly doing business with it. *Buenemann v. St. Paul, M. & M. R. Co.,* 32 Minn. 390, 20 N. W. 379. In such cases the highest possible degree of diligence and care are not required, but the law imposes upon a railroad company the duty of keeping its approaches reasonably safe for all persons using them for a lawful business purpose; and persons so using such approaches have a right to assume that they are reasonably safe."

It will avail defendant nothing to contend that the invitation thus extended to plaintiff to transact business with it did not invite him to approach its platform and train by way of B street, and over the strip of land on which the frost box was located, for the reason that the evidence discloses that defendant had held out said strip of land to the public for years as a proper approach

and recognized way to its said platform, and was under obligation to plaintiff, as a member of the public lawfully on its premises, to use a reasonable degree of care to keep said strip of land in a safe condition for his protection, and for the protection of all persons who might lawfully pass over it on their way to transact business with the defendant.    26 Am. & Eng. Enc. of Law, *supra,* says:

"It is the general duty of railroad companies to use a reasonable degree of care to keep in a safe and convenient condition, for the protection of all persons who are lawfully upon the premises for the transaction of business, their station, platforms, and approaches thereto and exits therefrom, and such ways as the railroad company holds out to the public as proper approaches to its station platforms"—
citing *Cross v. Lake Shore, etc., Ry. Co.,* 69 Mich. 363, 37 N. W. 361, 13 Am. St. Rep. 399; *Louisville, etc., Ry. Co. v. Hirsch,* 69 Miss. 126, 13 South. 244; *Delaware, etc., Ry. Co. v. Trautwein,* 52 N. J. Law, 169, 19 Atl. 178, 7 L. R. A. 435, 19 Am. St. Rep. 442; *Beard v. Connecticut, etc., Ry. Co.;* 58 Vt. 101.

In *Cross v. Lake Shore, etc., Ry. Co., supra,* plaintiff sued for injuries received by a fall into a hole upon the station grounds of the defendant at Pittsford, Mich.   The facts disclosed that plaintiff was a passenger on one of defendant's trains, and reached that town in the night.   It was dark, raining, and there were no lights about the grounds outside the depot; his wife was with him; they left the depot to go to her residence, and to reach the main street of the village they had to go east from the depot; on his way, and while on the grounds of the company, he fell into a hole on a recognized way used by the public going to and from the depot, and sustained permanent injuries.   The trial court held the defendant liable, and the judgment was sustained by the Supreme Court, which in passing said:

"This diagonal walk being a recognized way to and from the depot, it was the duty of the defendant to keep it reasonably safe. 1 Ror. R. R. 476; Smith, Neg. (2d Ed) *126, *188; Cooley, Torts, 605; *Delaney v. Railroad Co.,* 33 Wis. 67; *Hulburt v.*
Vol. 24—8

*Railroad Co.,* 40 N. Y. 145; *Dillaye v. Railroad Co.,* 56 Barb. (N. Y.) 30; *Gaynor v. Railway Co.,* 100 Mass. 208, 97 Am. Dec. 96; *Tobin v. Railroad Co.,* 59 Me. 183, 8 Am. Rep. 415; *Hoffman v. Railroad Co.,* 75 N. Y. 605; *Cartwright ·v. Railway Co.,* 52 Mich. 606, 18 N. W. 380, 50 Am. Rep. 274"—

and in the syllabus said:

"It is the duty of a railway company to keep in a reasonably safe condition a *recognized* way used by the public in going to and from its depot. A hole so near a *recognized* way, used by the public in going to and from a railroad depot, that a man in the 'ordinary aberrations of travel' might fall into it should be guarded by the company to prevent such an accident."

It having been found, in effect, by the jury under instructions not excepted to, that defendant failed in its duty to plaintiff to use a reasonable degree of care to keep in a reasonably safe condition the recognized way over its grounds from B street to its platform, and there being evidence reasonably tending to support the verdict, and none from which we could say as a matter of law that plaintiff was guilty of contributory negligence, the judgment of the lower court is affirmed.

All the Justices concur.